(No. 34122.— ▮)
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* CHESTER NAILS, Plaintiff in Error.

*Opinion filed January 24, 1957.*

IRVIN J. JACOBSON, of Chicago, for plaintiff in error.

LATHAM CASTLE, Attorney General, of Springfield, and WILLIAM L. GUILD, State's Attorney, of Wheaton, (FRED G. LEACH, and WILLIAM J. BAUER, of counsel,) for the People.

Mr. Justice Davis delivered the opinion of the court:

The defendant, Chester Nails, was found guilty by a jury in the county court of Du Page County of the crime of leaving the scene of an accident in violation of sections 36, 38 and 139 of the Uniform Act Regulating Traffic on Highways (Ill. Rev. Stat. 1953, chap. 95½, pars. 133, 135 and 236.) The trial court overruled post-trial motions and fined the defendant $500. The Appellate Court affirmed the judgment of the county court. 9 Ill. App.2d 417.

The information charging the offense contained two counts. Count I alleged that on April 7, 1954, the defendant, a passenger in a motor vehicle driven by Ray C. Rocke, was involved in an accident on Route No. 64 in Du Page County, wherein said motor vehicle was driven into Orville Topel, and knowing that said Topel had sustained personal injuries, did aid, abet and assist said Rocke to leave the place of the accident without giving his name, address and motor vehicle number, in that the defendant did drive the said motor vehicle and the said Rocke from the scene of said accident without leaving such information. Count II alleged that the defendant was then and there involved in an accident wherein one Orville Topel was struck by a certain motor vehicle which caused the said Topel to sustain personal injuries, and that the defendant failed to stop, give information as to the name of the driver, address and registered number of the motor vehicle, and did fail to render reasonable assistance and aid to said Topel, and that said defendant did drive the said motor vehicle from the scene of the accident. Defendant urges that the evidence fails to establish his guilt as charged in count I because there is no showing that he had knowledge that Rocke had failed to leave the required information, and for the further reason that Topel was unconscious and thereby compliance with the statute was impossible and not required. Defendant also argues that he could not be guilty under

count II since the applicable statute imposes the duty to render aid and assistance only upon the driver and not upon a passenger; and that the duty to render aid and assistance is excused in any case where such aid and assistance are being given by others. To properly consider these contentions, we must construe the applicable statutes in the light of the facts involved.

Section 36 of the act provides: "(a) The driver of any vehicle involved in an accident resulting in injury to or death of any person shall immediately stop such vehicle at the scene of such accident or as close thereto as possible but shall then forthwith return to and in every event shall remain at the scene of the accident until he has fulfilled the requirements of Section 38. Every such stop shall be made without obstructing traffic more than is necessary. (b) Any person failing to stop or to comply with said requirements under such circumstances shall upon conviction be punished by imprisonment for not less than 30 days nor more than 1 year or by fine of not less than $100 nor more than $1,000, or by both such fine and imprisonment. (c) The Secretary of State shall revoke the chauffeur's license of the person so convicted." Ill. Rev. Stat. 1953, chap. 95½, par. 133.

Section 38 provides: "The driver of any vehicle involved in an accident resulting in injury to or death of any person or damage to any vehicle which is driven or attended by any person shall give his name, address, and the registration number of the vehicle he is driving and shall upon request and if available exhibit his operator's or chauffeur's license to the person struck or the driver or occupant of or person attending any vehicle collided with and shall render to any person injured in such accident reasonable assistance, including the carrying, or the making of arrangements for the carrying of such person to a physician, surgeon, or hospital for medical or surgical

treatment, if it is apparent that such treatment is necessary, or if such carrying is requested by the injured person." Ill. Rev. Stat. 1953, chap. 95½, par. 135.

Section 139 provides: "Every person who commits, attempts to commit, conspires to commit, or aids, or abets in the commission of any act declared herein to be a crime, whether individually or in connection with one or more other persons or as a principal, agent or accessory, shall be guilty of such offense, and every person who falsely, fraudulently, forcibly, or wilfully induces, causes, coerces, requires, permits, or directs another to violate any provision of this Act is likewise guilty of such offense." Ill. Rev. Stat. 1953, chap. 95½, par. 236.

Six witnesses testified for the People. The defendant neither testified nor submitted evidence. The evidence adduced established that Orville Topel, a deputy sheriff of Du Page County, was struck and seriously injured, while in the course of his duties, by an automobile driven by Ray C. Rocke in which the defendant, Chester Nails, was riding shortly after 1:00 o'clock A.M. on April 7, 1954, on State Route No. 64 near its intersection with Swift Road. Prior to the accident Topel had been proceeding west in a squad car and had stopped to render assistance to motorists who had encountered difficulty because of the dense fog which prevailed in the locality. One car had run off the road on the south side of the highway and the drivers of two other cars, both women, had stopped on the north side of the road because they felt it unsafe to proceed. Topel drove his squad car into a nearby driveway and proceeded to put out red flares and to make a call on the two-way radio for assistance for the motorist whose car was mired on the south side of the highway. He carried a lighted red flare in his hand to protect his movements, and while thus engaged a large semi-trailer truck drove up from the east and stopped on the outer west-bound lane of the highway. The driver, John Boris, saw the red flares and, believing

that someone was in trouble, stopped to render aid. After stopping, he placed lighted red flares some distance in front of, behind, and on the left side of his truck. Officer Topel, still carrying a lighted red flare, talked with Boris near the left side of the truck and they had taken a few steps toward the center of the highway when they were struck by Rocke's car which suddenly appeared from the west. Boris was slightly injured, but Topel incurred severe head and leg injuries which rendered him unconscious immediately. This condition continued for nine days. One eye-witness testified that Rocke's car came from the west at a rapid rate of speed which she estimated at 35 to 40 miles per hour. She further stated that the impact hurled Topel 20 feet into the air.

Ray C. Rocke testified that on the evening in question, he worked as bartender at the Nor-Vil Inn, a tavern located at the intersection of Villa Road and Route No. 64; that the defendant, Chester Nails, a police officer of the village of Elmhurst, came into the tavern dressed in his police-man's uniform which included shirt, tie, gun, trousers and hat; that Nails and Rocke left the Nor-Vil Inn together and drove west on Route No. 64 in Rocke's car, a 1950 Plymouth, to the Bavaria, another tavern, located on the north side of the highway just east of Main Street in Glen Ellyn; that they stayed there until closing time, shortly after 1:00 A.M.; that he then drove east on Route No. 64; that it was very foggy and the first thing he knew he hit someone; that he stopped on the south side of the highway as soon as he could and went back to where he found a man in uniform lying on the pavement; that he pulled the man to the side of the road where he placed his jacket under the man's head; and that there were others present but at some distance and they did not help him drag the man off the road. He further testified that he remained at the scene just long enough to pull the man off the road; that he can't remember talking to anyone there as he was "kind

of nervous" at the time; that he did not give his name and address, show his driver's license or reveal the registration number of his car to anyone before leaving; that when he returned to his car he got into the driver's position and the defendant, Nails, who had stayed near the machine said: "Get over. We've got to get out of here"; that the witness then stated that he would drive but that Nails said: "No, I'll do the driving"; that Nails then got into the driver's position and they drove away; and that while the witness was away from the machine Nails had removed his officer's hat and his gun. On cross-examination Rocke stated that he could not remember whether Nails had said anything about getting help at the time though "that was in our mind."

Rocke further testified that they drove four miles to his home after leaving the accident; that they found his wife talking on the telephone and told her there had been an accident, and Nails asked her to get off the phone so he could call a hospital; that at Nails' request, Rocke gave him a jacket to wear; that Rocke's wife who had gotten dressed suggested that they return immediately; and that Mrs. Rocke, accompanied by her husband and the defendant, drove to the scene of the accident.

Jack Parrish, a deputy sheriff of Du Page County testified that he arrived at the place of the accident at about 2 A.M. where he found officer Topel unconscious; that he was standing beside his squad car when the defendant approached him and identified himself as officer Nails of Elmhurst; that Nails then stated that a friend of his was in trouble and he would like to help him; that Parrish then asked him who his friend was and what sort of trouble he was in, and that the defendant refused to tell him; that someone at the scene of the accident had handed the witness a Plymouth car radiator emblem; that he later discovered a Plymouth car about five cars back which lacked such an ornament; that a woman was in the driver's posi-

tion in this car, and a man, later identified as Rocke, was lying on the right side of the back seat; that Rocke was then questioned by Parrish and admitted that he had driven the car which struck Topel; and that he immediately arrested Rocke. Parrish also testified that, during their conversation, Nails neither disclosed that he had previously been at the scene of the accident, nor revealed the identity of the driver of the car.

Count I of the information involved here charges that the defendant did aid, abet and assist Rocke to leave the place of the accident without giving his name, address, or motor vehicle number. We believe that the evidence clearly establishes the charge and that the jury was warranted in believing that the defendant not only aided and abetted Rocke to leave the scene of the accident without revealing his identity but subsequently endeavored to keep the authorities from discovering who caused the accident. The contention that the defendant did not know that Rocke had not revealed his identity before returning to the car is not borne out by the evidence. The haste with which he removed himself and the principal from the scene; his aid to the principal in withholding a report of the required information concerning the accident; the removal of his hat and gun; his mysterious conversation with officer Parrish concerning his friend who was in trouble; the wearing of Rocke's jacket when returning; and his failure to reveal to Parrish that he himself had been there at an earlier time, all indicate that the defendant believed that Rocke had not previously revealed his identity.

The argument that the revealing of Rocke's identity was excused or not required because Topel was unconscious is without merit. There is no evidence whatever that either Rocke, or the defendant, at any time sought to reveal Rocke's identity to anyone, or were interested in so doing. On the contrary, all the evidence points to its deliberate concealment. Defendant relies on the case of *People* v. *Scofield,*

203 Cal. 703, 265 Pac. 914, in which the Supreme Court of California held that the evidence did not establish defendant's violation of section 141 of the California Vehicle Act. The facts of that case are readily distinguishable. The California Supreme Court in the later case of *People* v. *Steele,* 100 Cal. A. 639, 280 Pac. 999, construed section 141, which is acknowledged by defendant to be similar to the Illinois statute. In that case, a woman was struck and killed by a car driven by Steele in which Kearney was a passenger. Steele stopped the car some distance from the scene of the accident, after which Kearney took the wheel and drove away at a high speed. The California Supreme Court sustained Kearney's conviction of leaving the scene of an accident in violation of the statute and held that it was for the jury to determine whether his conduct in urging Steele to flee, and in driving from the scene of the accident rendered him guilty of aiding and abetting Steele in committing this offense. In that case, as in the case at bar, the injured party was rendered unconscious immediately so that no information as to name, address or vehicle registration could be communicated to the victim, yet the conviction was sustained. The court further observed that in the *Scofield case,* which involved a collision of two automobiles, the defendant, as well as the driver of the other automobile, was rendered unconscious; that both cars were stopped by the impact and remained at the scene until all parties directly concerned had been removed; and that there was no positive proof that defendant had left the scene.

We agree with the Illinois Appellate Court that the gist of the crime defined in sections 36 and 38 of the act is in the concealing, or attempting to conceal the identity of one involved in an automobile accident wherein personal injuries are sustained. Rocke dragged Topel, the unconscious victim of the accident, from the roadway, but neither he nor defendant remained to determine the character or extent of Topel's injuries, nor to furnish the information

required by statute. The evidence in the case at bar clearly establishes Rocke's guilt as principal, and that the defendant is guilty as an accessory in that he aided and abetted the commission of the offense, as charged in count I.

Likewise the evidence proves defendant's guilt under count II. Sections 36 and 38 of the act required Rocke to return to the scene of the accident and remain there until he had rendered reasonable assistance to Topel, including carrying, or making arrangements to carry him to a physician, surgeon or hospital for medical or surgical treatment. The evidence clearly shows that Rocke left the scene of the accident without in any way complying with any of these statutory requirements. It also shows that the defendant aided and abetted Rocke to leave the place without caring for Topel as required. Under section 139 of the act the defendant is guilty of the offense as a principal and may be charged, convicted, and punished as such.

We reject the contention that Rocke was excused from complying with the statute because Topel was in the care of others. The truth is that neither Rocke nor the defendant waited long enough to determine the nature or extent of the injuries, or whether Topel was receiving any care at all. The fact that others summoned an ambulance neither justifies nor condones the conduct of Rocke or the defendant. The evidence clearly shows that both left the scene long before the ambulance arrived and without knowing that it had been summoned.

It is not contended that the record contains any errors of law, and we believe that the verdict of the jury is supported by the evidence. The judgment of the Appellate Court affirming the judgment of the county court of Du Page County is affirmed.

*Judgment affirmed.*